# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| CRYSTAL HUNT,<br><br>*Plaintiff,*<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS INC.,<br><br>*Defendant.* | CIVIL ACTION NO.<br>5:24-cv-00348-TES |

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

Plaintiff Crystal Hunt filed this action on October 7, 2024, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, ("FCRA"). *See generally* [Doc. 1]. In response, Defendant Experian Information Solutions, Inc. ("Experian") filed a Motion to Compel Arbitration [Doc. 13].

## BACKGROUND

On June 8, 2021, Plaintiff signed up for free credit monitoring through Experian. [Doc. 13-1, ¶ 3]. To do so, Plaintiff created an account with CreditWorks and agreed to CreditWorks' Terms of Use (the "Terms"). [*Id.* at ¶ 3]. The Terms included an arbitration clause requiring Plaintiff to litigate all claims against Experian[1] in

---

[1] The Terms explicitly reference "ECS," which includes Experian "because it is an affiliate of ECS." *Pipoly v. Experian Info. Sols., Inc.*, No. 1:23-CV-925-MHC-CMS, 2023 WL 5184188, at *3 (N.D. Ga. Aug. 2, 2023).

arbitration. [*Id.* at ¶ 6]. Now, skip forward a few months. On November 21, 2021, Plaintiff applied for a Sam's Club credit card—through Synchrony Bank. [Doc. 1, ¶ 72]. After submitting her application, Plaintiff received notice that Experian reported her as deceased on her credit report, and consequently, Experian did not report a credit score in its file. [*Id.* at ¶ 73]. Following that report, Sam's Club denied Plaintiff's credit-card application. [*Id.*]. Plaintiff contends that she chalked the report up as a simple mistake and moved on. [*Id.* at ¶ 75].

After receiving several pre-approval notices, Plaintiff then applied for a Capitol One card. [*Id.* at ¶ 76]. Like Sam's Club, Capitol One also denied Plaintiff's application due to the lack of a credit score. [*Id.* at ¶ 78]. Again, "Plaintiff thought this was a simple mistake," but became increasingly frustrated. [*Id.* at ¶ 80].

Next, Plaintiff attempted to use a new payment platform to pay her rent. [*Id.* at ¶ 81]. On that platform, Plaintiff discovered she could use a service—Flexible Rent by Best Egg—to "pay rent on flexible terms." [*Id.* at ¶ 82]. Plaintiff then applied for the Flexible Rent program. [*Id.* at ¶ 84]. Once more, Best Egg denied Plaintiff's application because Experian did not report a credit score. [*Id.* at ¶ 85]. Following the denial of her Flexible Rent application, Plaintiff's property management company required her to prove she was not using a deceased person's identity. Plaintiff contends that these accusations and misrepresentations on her credit report caused her to be "shocked and worried about the possibility of becoming homeless due to being inaccurately reported as deceased."

[*Id.* at ¶ 91]. Ultimately, Plaintiff obtained a letter from the Social Security Administration proving that she was not deceased. [*Id.* at ¶ 93].

On September 8, 2024, Plaintiff obtained a copy of her Experian credit report, which showed an account held by Phillips Property, which reported Plaintiff to be deceased. [*Id.* at ¶ 97]. Plaintiff now brings a claim under FCRA alleging that Experian "failed to follow reasonable procedures to assure maximum possible accuracy." [*Id.* at p. 23 (capitalization altered)].

In response, Experian asks the Court to compel arbitration, citing the Terms Plaintiff acknowledged when she signed up for CreditWorks. [Doc. 13, p. 14]. Hoping to avoid the outcome of many of her plaintiff-counterparts across the country, Plaintiff argues that "Experian cannot bear its burden of proving the formation and existence of a binding arbitration agreement." [Doc. 14, p. 6].

In the Court's view, tucking an arbitration clause behind a hyperlink and then burying it in dense mice-type brimming with mind-numbing legal jargon is a quintessential example of "[w]hat may be legal is not always right." *In re Graves Farms*, No. 18-10893, 2019 WL 3407134, at *8 (Bankr. D. Kan. July 26, 2019). But, the Court's job is simply to apply the law and that it does in this case.

## **LEGAL STANDARD**[2]

Congress enacted the Federal Arbitration Act ("FAA") "[t]o overcome judicial resistance to arbitration." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA declares a "liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 3 directs courts to stay proceedings in any case raising a dispute referrable to arbitration. 9 U.S.C. § 3. And Section 4 allows a court to issue an order compelling arbitration when parties do not comply with their arbitration agreement. 9 U.S.C. § 4.

"Arbitration is a matter of contract and consent." *JPay, Inc. v. Kobel*, 904 F.3d 923, 928 (11th Cir. 2018). "Arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Id*.

---

[2] The standard for motions to compel is akin to the summary-judgment standard. Therefore, "a district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016).

(quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986)). "Because of the FAA, federal courts are required to place arbitration clauses on equal footing with other contracts." *Solymar Inv. v. Banco Santander S.A.*, 672 F.3d 981, 988 (11th Cir. 2012). Even so, federal courts must interpret arbitration clauses broadly where possible. *Id*. (citing *AT&T Techs.*, 475 U.S. at 649-50).

To determine whether an enforceable arbitration agreement exists, the Court looks to Georgia law. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists."). Under Georgia law, a valid contract requires "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. "[U]nless and until there is the mutual assent of the parties to all essential terms, there is no complete and enforceable contract." *Extremity Healthcare, Inc. v. Access To Care Am., LLC*, 793 S.E.2d 529, 534 (Ga. Ct. App. 2016). In determining assent, Georgia courts "apply an objective theory of intent whereby one party's intention is deemed to be that meaning a reasonable person in the position of the other contracting party would ascribe to the first party's manifestations of assent." *Id.* (quoting *Hart v. Hart*, 777 S.E.2d 431, 433 (Ga. 2015)). "The party asserting the existence of a contract has the burden of proving its existence and its terms" by a preponderance of the evidence. *Bazemore*, 827 F.3d at 1330 (quoting *Jackson v. Easters*, 379 S.E.2d 610, 611 (Ga. Ct. App.

1989)). In the internet context, the Georgia Court of Appeals has held that hyperlinked terms and conditions appearing on registration pages are generally enforceable "if a reasonable [person] would know that more information would be found if he clicked upon the hyperlink." *Thornton v. Uber Techs., Inc.*, 858 S.E.2d 255, 259 (Ga. Ct. App. 2021). Indeed, a "failure to read does not excuse a party's obligations under a contract," including terms and conditions found in a hyperlink. *Id.*

## DISCUSSION

Plaintiff first challenges Experian's evidence supporting its Motion. Namely, Plaintiff contends that Experian's declarant—Dan Smith—"cannot validate what appeared on Plaintiff's unknown electronic device on June 8, 2021, when Plaintiff allegedly signed up for a CreditWorks account." [Doc. 14, p. 8]. Plaintiff's argument is not new or novel—indeed, plaintiffs across the country present these same arguments. And, plaintiffs across the country lose nearly each of those battles. *See, e.g.*, *Hanson v. Experian Info. Sols., Inc.*, No. 1:23-CV-4564-MHC-CMS, 2024 WL 3509482, at *4 (N.D. Ga. July 22, 2024); *Pipoly v. Experian Info. Sols., Inc.*, No. 1:23-CV-925-MHC-CMS, 2023 WL 5184188, at *3 (N.D. Ga. Aug. 2, 2023); *Humphrey v. Equifax Info. Servs., LLC*, No. 2:24-CV-423-ACA, 2024 WL 5247164, at *3 (N.D. Ala. Dec. 30, 2024); *see also* [Doc. 15, p. 4 (collecting cases)].

Before getting to the meat of Plaintiff's argument, the Court discusses Smith's declaration to properly set the scene for the admissibility question.[3]

Smith serves as the Director of Product Operations for Consumerinfo.com, Inc. [Doc. 13-1, ¶ 1]. In that role, Smith supports "the consumer enrollment process into CreditWorks and related services." [*Id.*]. Smith also used his position to retrieve specific membership information regarding Plaintiff's CreditWorks account. [*Id.*]. Upon review of that membership information, Smith found that Plaintiff enrolled in CreditWorks on June 8, 2021. [*Id.* at ¶ 3].

To enroll, the site requires individuals like Plaintiff to complete a single webform. [*Id.*]. That form requests personal information, and then requires registrants to click a "Create Your Account" button to enroll. [*Id.*]. Following that click, registrants receive a notice and disclosure that "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." [*Id.*]. In that disclosure, the words "Term of Use Agreement" are "off-set in bold blue text and, if clicked, would [present] the consumer with the full text of the

---

[3] A "declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Federal Rule of Evidence 602 likewise provides that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 601. "Personal knowledge may be proved by a witness's or a declarant's own testimony, or reasonably inferred from his position or the nature of his participation in the matters to which he swears." *Johnson v. Sw. Recovery Servs. Inc.*, No. 3:22-CV-242-X-BH, 2023 WL 1944127, at *3 (N.D. Tex. Jan. 24, 2023), *report and recommendation adopted*, No. 3:22-CV-0242-X-BH, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023).

agreement." [*Id.* at ¶ 4]. In other words, "the phrase 'Terms of Use Agreement' in the disclosure [is] a full text hyperlink to the Terms of Use." [*Id.*]; *see also* [Doc. 13-1 (screenshot of registration page)]. According to Smith, there is no way to create an account without accepting the Terms. [Doc. 13-1, ¶ 5]. Importantly, as noted earlier, the Terms contained an Arbitration Agreement, "which requires [Plaintiff] to litigate, among other things, all claims against 'ECS' that 'relate to' or 'arise out of' the agreement in arbitration, including claims under the 'Fair Credit Reporting Act.'" [*Id.* at ¶ 6]; *see also* [Doc. 13-1, p. 18 (Terms of Use, including section entitled "**DISPUTE RESOLUTION BY BINDING ARBITRATION**")].

With that in mind, Plaintiff challenges Smith's declaration under Federal Rule of Civil Procedure 56(c)(4) because, as Plaintiff sees it, "[h]e does not provide, or even so much as reference, any documents which substantiate his assertions about Plaintiff's interactions on any website, the nature of the allegedly accessed webforms, or the contents of any hyperlinks allegedly clicked by Plaintiff on June 8, 2021." [Doc. 14, p. 9]. Going further, Plaintiff contends "Smith neither cites to nor includes as evidence for his statements **any** internal records establishing the IP address of the device allegedly used on June 8, 2021, demonstrating an audit or activity log for that IP address, or any other record which in any way could prove to a reasonable jury that Plaintiff did, in fact, view and agree to the agreement Experian seeks to enforce here." [*Id.*].

Plaintiff's arguments are unconvincing. Indeed, "Smith did not have to be in the room with [Plaintiff] when she enrolled to have firsthand knowledge. His knowledge of the enrollment process, including the forms a person must complete to enroll, is sufficient firsthand knowledge upon which to base the declaration." *Buelna v. Experian Info. Sols., Inc.*, No. 3:23-CV-724-CCB-SJF, 2024 WL 3873694, at *3 (N.D. Ind. Aug. 20, 2024). Further, "[c]ontrary to Plaintiff's argument, Mr. Smith is not speculating as to what Plaintiff 'accessed, saw, or clicked on [June 8, 2021],' but is rather asserting what was necessary to enroll in CreditWorks." *Scribner v. Trans Union LLC*, No. 2:23-CV-02722-JAM-CKD, 2024 WL 3274838, at *2 (E.D. Cal. July 2, 2024). And, as for Plaintiff's boiler-plate arguments regarding a lack of specific documents referenced in Smith's declaration, *see* [Doc. 14, pp. 8–9], Plaintiff "failed to cite to any binding case law that would require this Court to hold that Experian's failure to provide the actual documents showing the exact information contained in Smith's declaration renders the declaration inadmissible." *Hanson*, 2024 WL 3509482, at *8. In the end, the Court agrees with the vast majority of its sister courts and concludes that Smith's declaration is "made with the requisite personal knowledge and [satisfies] the requirements of Rule 56(c)(4)."[4] *Id.*

---

[4] The Court acknowledges that a handful of district courts—including two in the Eleventh Circuit—sided with Plaintiff and excluded part of Smith's declaration. *See, e.g.*, Order, *Newton v. Experian Info. Sols., Inc.*, No. 6:23-cv-00059-JRH-BKE (S.D. Ga. July 18, 2024), ECF No. 33. However, the Court simply sees things differently than his learned colleagues.

9

The only remaining question, then, is whether Plaintiff assented to the Terms, thereby agreeing to the arbitration clause. The Court finds Plaintiff objectively manifested her assent to the Terms. To be sure, a "web-based form [is] sufficient to manifest assent to the Terms of Use." *Buelna*, 2024 WL 3873694, at *3. Put another way, "Web-based 'click-wrap' agreements are an acceptable way to manifest assent to be bound by a contract 'as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement.'" *Id.* (citing *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016)). Here, the language of the registration page clearly states that "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." [Doc. 13-1, p. 10].[5] That language is more than enough to give Plaintiff reasonable notice that her "click" would result in her assent to the Terms.[6]

Once again, Plaintiff's arguments don't move the needle. Plaintiff argues that "nothing **required** the consumer to first click on the box containing the arbitration agreement, nor to scroll down to view the complete contents of the same, nor did the sign-up process call the consumer's attention to any arbitration agreement." [Doc. 14, p.

---

[5] As discussed below, Plaintiff does not quibble with Smith's explanation of the registration process, or the language shown on the account-creation page.

[6] That language is also more than enough to distinguish Plaintiff's primary case cite—*Sgouros*. Indeed, *Sgouros* relied on a case-specific website link that said "nothing about contractual terms." 817 F.3d at 1035. And, more importantly, the Seventh Circuit later distinguished *Sgouros* on facts similar to those at issue in this case. *See Domer v. Menard, Inc.*, 116 F.4th 686, 691 (7th Cir. 2024).

18]. Even more, Plaintiff's declaration asserts that she "was not aware of Experian's claim that when I signed up for credit monitoring, I agreed to arbitrate any claims against Experian." [Doc. 14-2, ¶ 6]. But Plaintiff's lack of awareness of the arbitration clause does not create an issue of fact regarding contract formation. *See, e.g., George v. Experian Info. Sols.*, No. 23-CV-02303-LKG, 2024 WL 3013146, at *8 (D. Md. June 14, 2024); *see also Cimillo v. Experian Info. Sols., Inc.*, No. 21 CV 9132 (VB), 2023 WL 2473403, at *6 (S.D.N.Y. Mar. 13, 2023) ("While it may be true that plaintiff does not remember signing up for CreditWorks, it does not create an issue of fact as to whether she assented to the contract's terms.") (internal citations omitted).[7]

To be sure, Plaintiff does not contest Smith's description of the enrollment process.[8] She also doesn't contest that she clicked the button to agree to the Terms. Instead, she only contends that she doesn't recall seeing anything "indicating that [she] would be waiving [her] right to a jury." [Doc. 14-2, ¶ 9]. That may be true. In other words, Plaintiff may have enrolled in CreditWorks without ever clicking the link to view the Terms and reading the full contract. That does not negate her assent to the Terms, though. *Cf. Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017); *see also Brewer v. Royal Ins. Co. of Am.*, 641 S.E.2d 291, 293 (Ga. Ct. App. 2007) ("[O]ne who signs a

---

[7] *Mancilla v. ABM Indus., Inc.*, No. 20 CIV. 1330 (KPF), 2020 WL 4432122, at *7 (S.D.N.Y. July 29, 2020) ("And while she does contend that 'she does not recall seeing' the Mutual Arbitration Agreement . . . , this is insufficient to create a genuine issue of material fact as to whether the parties entered into an arbitration agreement.").

[8] Plaintiff also does not argue that her claims fall outside of the arbitration clause's scope.

11

contract is presumed to know its contents[.]") (internal citations omitted). Whether she fully grappled with the terms she agreed to or not, as Experian succinctly put it: "(1) Plaintiff was on notice that, by clicking the signup button, she was agreeing to the Terms of Use, (2) Plaintiff clicked the button, and (3) the Terms of Use contains an Arbitration Agreement that EIS may enforce." [Doc. 15, p. 9]. Plaintiff bears the responsibility of ensuring she reads the entirety of a contract placed before her[9]—not simply agreeing to blind terms and later claiming ignorance. *Cf. Tadic v. Experian Info. Sols., Inc.*, No. 1:18-CV-2911-TWT, 2019 WL 11499103, at *2 (N.D. Ga. Mar. 13, 2019) ("Federal courts routinely enforce internet agreements where, as here: (1) the user is required to affirmatively acknowledge the agreement before proceeding with use of the website, or (2) the website puts a reasonably prudent user on inquiry notice of the terms of the contract, which depends on the design and content of the website and the agreement's webpage.") (internal citations omitted)).[10] In sum, "[t]he evidence indicates that Plaintiff assented to the contract as a whole, including the arbitration clause," when she agreed to the Terms—by affirmatively clicking the "accept" button—on

---

[9] *D.L. Lee & Sons, Inc. v. ADT Sec. Sys., Mid-S., Inc.*, 916 F. Supp. 1571, 1578 (S.D. Ga. 1995) ("A person who signs a contract is imputed with knowledge of the contents of that contract. Specifically, everyone is charged with the responsibility of reading and knowing the contents of a contract which he signs.").

[10] The Court also finds that Plaintiff received clear notice of the Terms and that CreditWorks required her to affirmatively acknowledge the agreement before creating her account. *See Tadic*, 2019 WL 11499103, at *2.

CreditWorks' website. *W.L. Jorden & Co. v. Blythe Indus., Inc.*, 702 F. Supp. 282, 284 (N.D. Ga. 1988).

## CONCLUSION

Based upon the foregoing, the Court finds Smith's declaration admissible and concludes that Experian carried its burden of showing Plaintiff's assent to the Terms of Use—including the arbitration clause. Therefore, the Court **GRANTS** Experian's Motion to Compel [Doc. 13] and **STAYS** this case pending the outcome of arbitration. *See* 9 U.S.C. § 3. The Court **DENIES** Experian's Motion to Stay Discovery [Doc. 16] **as moot**. The Clerk of Court is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case. The parties **SHALL** file a status report within *30 days* following the completion of arbitration.

**SO ORDERED**, this 15th day of January, 2025.

S/ *Tilman E. Self, III*
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**